No. 46,625

JUNE A. SHAPIRO, As the Widow of ROY SHAPIRO, Deceased, *Appellee,* v. KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Appellant.*

(507 P. 2d 281)

Opinion filed March 3, 1973.

*Marshall Crowther,* special assistant attorney general, argued the cause, and *Vern Miller,* attorney general, and *William F. Morrissey,* assistant attorney general, were with him on the brief for the appellant.

*L. M. Cornish, Jr.,* of Glenn, Cornish and Leuenberger, of Topeka, argued the cause, and *Edward B. Soule,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from a decision of the district court of Shawnee County granting judgment to June Shapiro (plaintiff-appellee) for accidental death benefits pursuant to K. S. A. 1965 Supp. 74-4916(2). The Board of Trustees (board) of the Kansas Public Employees Retirement System (KPERS) had previously denied her claim.

The appellee's deceased husband, Roy Shapiro, was an employee of the State of Kansas from 1937 until the date of his death May 29, 1967, except for the period of time he was on active military duty during World War II. Mr. Shapiro became the State Controller in 1953 and continued to serve in that position until his death at the age of 55 years.

Mr. Shapiro's death was the result of an acute coronary occlusion. He was described by fellow workers as a very intense person who was concerned about his job. He was a perfectionist. Testimony showed Shapiro worked long hours and was very punctual. On the day of his death, Shapiro was described by some who saw him as "wan", "pallid", "distracted", "tense", and "abrupt".

In addition to his regular job as State Controller, Shapiro was also a member of the Board of Trustees of KPERS and a member of the school budget review board which conducted many hearings.

On the day of his death Shapiro worked in the Statehouse all day until the late afternoon, when he went directly to Dr. Louis Cohen's office pursuant to an appointment with the doctor. He died in the doctor's office.

After the death of Mr. Shapiro, his widow made application to the Board of Trustees of KPERS for the statutory death benefits under K. S. A. 1965 Supp. 74-4916 (2). In addition to the application, Mrs. Shapiro filed various documents and statements, including the death certificate, statements from Fred Carman and Robert E. Hoffman and James Bibb, her own statement in affidavit form,

the State Controller job description, and a justification of claim. All the statements and affidavits were filed and considered by the board without objection. Mrs. Shapiro also filed affidavits signed by Dr. Louis Cohen, M. D. and Dr. A. A. Fink, M. D. The board chose not to introduce any evidence, but did file a letter from Dr. Orville R. Clark, M. D. to Marshall Crowther, legal counsel for KPERS.

Dr. Cohen, a practicing physician in Topeka, Kansas, and an internal medicine specialist, stated that he first examined Mr. Shapiro on April 28, 1967, *because of chest pains which Mr. Shapiro had incurred the prior week while walking up the inside stairway at the Statehouse.* Dr. Cohen stated that based upon his own personal knowledge, the information contained in his file, and the facts contained in the affidavits and statements filed with the board, it was his opinion "based on reasonable medical certainty" the coronary occlusion was caused by the stresses and strains of Mr. Shapiro's employment during the 1967 legislative session and thereafter until his death.

Dr. A. A. Fink, M. D. is a physician in Topeka, Kansas. He is a pathologist, having done considerable research and study in the field of heart disease. Dr. Fink stated that acute myocardial infarctions, such as suffered by Roy Shapiro, are generally inflicted upon people with executive type jobs with heavy pressures and responsibility. Dr. Fink stated that he had read the affidavits and statements on file, and based upon the facts stated in the affidavits and statements it was his opinion with "reasonable medical certainty", that the natural proximate cause of Mr. Shapiro's death was the intense pressures surrounding him in his position, and that his death was the result of an accident arising out of and in the course of his employment.

Dr. Orville Clark, M. D. was a physician the board consulted. Dr. Clark was a general surgeon practicing in Topeka at the time his report was given. He frankly stated he was not an internist, that he did not treat heart cases, and that he did not have the ability to give positive answers to some of the questions asked of him by the retirement board. Dr. Clark also admitted that while, in his opinion, there had been no "accident" in the usual sense of the word, if the "regulation" was meant to include an "unexpected complicating occurrence in the natural course of a disease" then the case would certainly be eligible for consideration in regard to accident benefits.

The board denied Mrs. Shapiro's application, finding that Mr. Shapiro's death was not the result of an accident. Mrs. Shapiro then appealed the board's decision to the district court of Shawnee County, Kansas. The question before the district court was whether the board's finding was based upon substantial competent evidence. After a hearing and after examining all of the affidavits, statements, documents and medical reports filed with the board, the district court found the board's determination was not supported by substantial competent evidence, that its action was arbitrary, capricious and unreasonable and that Mr. Shapiro's death was the result of an accident as contemplated by K. S. A. 1965 Supp. 74-4916 (2). The court thereupon granted judgment for Mrs. Shapiro.

On the record presented as we find it, the evidence is not in dispute. The question throughout the proceedings and here on appeal concerns the construction to be given K. S. A. 1965 Supp. 74-4916 (2), which was in effect at the time of Mr. Shapiro's death.

This particular statute was amended, effective July 1, 1967. The amendment specifically concerned cardiac cases.

The legislative history of this statute is essential. The Kansas Public Employees Retirement System Act was enacted in 1961 K. S. A. 74-4901 *et seq.* The act was intended to provide a means whereby public employees could accumulate reserves for themselves and their dependents and provide for old age, death and termination of employment. The original death benefit statute, K. S. A. 74-4916 provided:

"Upon the death of a member before retirement, his accumulated contributions shall be paid to his beneficiary."

In 1965, the legislature liberalized and broadened the death benefit statute by the enactment of Section 4 chapter 446 of the Laws of 1965. It is apparent the language employed by the legislature in amending the statute in 1965 was lifted from the Kansas Workmen's Compensation Act and its supporting case law. Essentially, the amendment provided that if a member should die before retirement "as a result of an accident arising out of and in the course of his actual performance of duty" an accidental death benefit would be payable, provided the board finds that the natural and proximate cause of death "was the result of an accident arising out of and in the course of the member's employment with a participating employer *at a definite time and place.*" (Emphasis added.)

In 1967, the accidental death benefit provision of the statute

was amended once again. This amendment, effective *after* the death of Mr. Shapiro, stated that:

"(*b*) In construction of this section of the act there shall be no presumption that the death of the member was the result of an accident nor shall there be a liberal interpretation of the law or evidence in favor of the person claiming under this subsection. *In the event of the death of a member resulting from a heart, circulatory* or respiratory condition *there must be clear and precise evidence that death was the result of an accident independent of all other causes* which arose out of and in the course of the member's actual performance of his duties in the employ of a participating employer." (Emphasis added.) (L. 1967, ch. 427 § 3; K. S. A. 74-4916[2] [*b*].)

The appellee argues the 1967 legislative amendment of 74-4916, *supra*, raises a presumption that the legislature intended to make a change in the law. We agree.

"The historical background and changes made in a statute are to be considered by the court in determining legislative intent for the purpose of statutory construction, and any changes and additions made in existing legislation raise a presumption that a change in meaning and effect is intended." (*Curless v. Board of County Commissioners*, 197 Kan. 580, Syl. ¶ 2, 419 P. 2d 876.) *Curless* was cited with approval in *Silks v. Lateral Sewer District*, 202 Kan. 489, 450 P. 2d 25.

Giving force and effect to the foregoing rule, we think it evident the 1967 legislature intended to change the existing accidental death benefit provision of the Kansas Public Employees Retirement System Act by foreclosing a liberal interpretation of the accidental death benefit provisions. The legislature emphasized this point by requiring clear and precise evidence that the death was the result of an accident, independent of all other causes, when death results from a heart, circulatory or respiratory condition.

The appellee contends Kansas decisions in the field of workmen's compensation should be considered in construing K. S. A. 1965 Supp. 74-4916. The appellee argues, because of the great similarity in language, subject matter and purpose, cases construing the Workmen's Compensation Act should be considered when construing the statute here in question. This point is well taken.

Examples of language found in both the Workmen's Compensation Act and in K. S. A. 1965 Supp. 74-4916 include:

". . . [A]s a *result of an accident* arising out of and in the course of his actual performance of duty. . . . [T]hat the natural and proximate cause of death was the *result of an accident* arising out of and in the course of the member's employment. . . ." (Emphasis added.)

It should be noted the legislature continues to speak of the "result" rather than the "cause" in relating to an "accident."

It is significant the purpose of both the Workmen's Compensation Act and KPERS Act was similar—to provide compensation to employees and their dependents for injury or death without regard to fault. (See, K. S. A. 74-4901; and K. S. A. 1965 Supp. 74-4916.)

This court has stated where statutes are similar in form and substance and are intended for substantially the same purpose, decisions construing one are material in determining rights and liabilities under the other. (*Klein v. Wells,* 194 Kan. 528, 535, 400 P. 2d 1002; *Bishop v. Board of County Commissioners,* 188 Kan. 603, 605, 364 P. 2d 65.)

"The important consideration is that almost identical language is contained in the statutes. . . ." (*Klein v. Wells,* supra.)

Based on the foregoing, we find the Kansas workmen's compensation law, as construed by our decisions, should be viewed as persuasive in construing K. S. A. 1965 Supp. 74-4916.

Was the death of Roy Shapiro the result of an "accident"?

This court has long followed a line of cases holding *"an accidental result"* to be compensable, if arising out of employment, as opposed to an "accidental cause". Substantial case law supports the proposition that even though death may be from a routine performance of duty and not in any sense "accidental", recovery is granted if the *effect* of the work was unexpected, undesigned and sudden, and therefore "accidental".

While the appellant does not dispute this proposition, it urges the rather slight language differences make the retirement statute depend on *"cause"*, while the workmen's compensation law depends on *"result"*.

In *Meyers v. Consolidated Printing & Stationery Co.,* 201 Kan. 806, 443 P. 2d 319, the court stated:

". . . [R]ules of law which have been applied in physical injury cases have been generally applied with equal force in heart cases. Whether the death is due to a vascular accident arising out of and in the course of the employment is a question of fact. When the question is determined by the district court it will not be disturbed by this court if there is substantial competent evidence to sustain it. (*Pratt v. Seis-Tech Exploration Co.,* [199 Kan. 732, 433 P. 2d 555].) . . .

". . . [A] vascular injury resulting in a compensable death must arise from the nature, conditions, obligations or incidents of the employment. . . . When a workman's physical structure gives way and death results from a coronary occlusion this court has held compensation may be awarded *if the*

*precipitating cause which results in the death, the vascular accident, is tracable to the work performed.* (*Bohanan v. Schlozman Ford, Inc.,* 188 Kan. 795, 366 P. 2d 28; *Geurian v. Kansas City Power & Light Co.,* [192 Kan. 589, 389 P. 2d 782].) . . ." (p. 808, 809.)

In *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197, the court considered an acute coronary occlusion. There the workman was an automobile salesman and did not perform physical labor, but he died while attending a farm sale at the behest of his employer because one of the employer's pickup trucks would be sold there. The farm sale was held outside in the cold and drizzling rain.

The court stated:

"It is clear from the record that Pinkston sustained personal injury within the meaning of the statute under consideration. This court has previously held that coronary occlusion, coronary thrombosis, cerebral hemorrhage, thrombosis or hemorrhage, or heart failure—acute, which resulted in death or disability to a workman, was personal injury by accident when it arose out of and was received in the course of the employment (citing cases). It is likewise clear that all the characteristics of an accident were present: The *occurrence* was sudden, unexpected and undesigned by Pinkston, and was of an afflictive and unfortunate character. . . ." (Emphasis added.) (p. 300, 301.)

In *Mein v. Meade County,* 197 Kan. 810, 421 P. 2d 177, the decedent had a history of heart trouble and had been doing the lightest work which his type of employment afforded during the two weeks prior to his death—mowing, trimming trees and bulldozing trees. Witnesses testified that the kind of work the decedent was doing was frustrating and that his doctor had cautioned him sometime ago that he was working too hard. The decedent did not become ill and die until approximately 1:00 a. m. in the morning, long after the working day was over. He died as the result of a coronary occlusion. Even though the court recognized in *Mein* that the decedent's death occurred several hours after the working day had ceased, and that his work on the day in question was not of an unusual or extraordinary nature, the court found a causal connection between the decedent's employment and his death. In the opinion it was stated:

"In a long line of decisions, this court has held that an injury to, or death of, a workman is compensable under the Workmen's Compensation Act where the physical structure of the workman, whatever it may be, gives way under the strain or stress of his usual and customary labor. (Citing cases.)" (p. 813.)

The court also made this observation:

"The mere lapse of time between work effort and heart attack does not compel a conclusion that connection between the two is lacking. . . ." (p. 815.)

Another heart case relating to the factual situation herein is *Hanna v. Edward Gray Corporation*, 197 Kan. 793, 421 P. 2d 205.

The appellant argues that because K. S. A. 1965 Supp. 74-4916 (2) uses the wording "at a definite time and place", workmen's compensation decisions are not to be considered—that the wording obviously makes the KPERS retirement act more limiting as it deals only with death benefit.

This addition simply codifies the case law that has developed in Kansas workmen's compensation decisions concerning the definition of an "accident".

By defining the term "accident" as an occurrence in workmen's compensation decisions the court has consistently held the "time and place" element must be present. An occurrence is defined as: "A coming or happening; any incident or event, especially one that happens without being designed or expected." (Black's Law Dictionary, 4th Ed.) Hence, any use of the term "accident" implies, by definition, an event with a definite time and place.

Here the "accidental result" was the death of Roy Shapiro due to acute coronary occlusion, and it was definite both as to time and place.

The fallacy of the appellant's reasoning becomes apparent when K. S. A. 1965 Supp. 74-4916 (3)(e), which was enacted at the same time, is considered. It deals with disability benefits and states:

"In the event that a retirant who is receiving an accident total disability benefit dies within five (5) years after the date of his retirement, an accidental death benefit shall then be payable as provided in subsection (2) of this section."

In other words, if the public employee who is receiving disability benefits dies within five years, his beneficiary is to receive the death benefits payable under subsection (2). There is no requirement that death occur at a "definite time and place" or that original disability arise at a "definite time and place."

Basically the question presented by this appeal is a question of law—the construction of K. S. A. 1965 Supp. 74-4916(2). The evidence is not in dispute. The board chose not to introduce any evidence, but did file a letter from Dr. Orville R. Clark, M. D. to Marshall Crowther, legal counsel for KPERS, as heretofore related. The board simply found Shapiro's death was not the result of an accident.

If the board's action be construed as a finding of fact, there is no substantial competent evidence in the record to support it.

(See, 2 Am. Jur. 2d *Administrative Law,* § 688.) All of the evidence before the board was to the contrary. Based upon our construction of K. S. A. 1965 Supp. 74-4916(2) the board either misconstrued the statute, which resulted in an erroneous application of the law, or the finding of the board constituted arbitrary action in denying the appellee's claim. Hence, the determination made by the district court of Shawnee County, Kansas, was within the scope of its review in considering administrative decisions (*Pickman v. Weltmer,* 191 Kan. 543, 382 P. 2d 298; and *Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 479 P. 2d 860, cert. den. 403 U. S. 914, 29 L. Ed. 2d 692, 91 S. Ct. 2240), when it determined the board's action constituted arbitrary, capricious and unreasonable conduct. It also had authority to determine whether the board's action was unlawful. Accordingly, the district court properly concluded the claimant was entitled to receive the accidental death benefits as set forth in the statute.

In *Strader,* supra, the court said:

". . . [W]hether there is any evidence to support the Board of Trustees' finding, or whether the findings are contrary to the evidence, presents a question of law which is always open to review by the courts. A finding without evidence, or contrary to the evidence, would also be such a gross mistake of fact as to have an effect equivalent to fraud as that phrase is used in the statute now under consideration.

"We, therefore, examine the record for the purpose of determining whether there is substantial competent evidence to support the finding of the Board of Trustees. . . ." (p. 397, 398.)

The judgment of the lower court is affirmed.