No. 47,179

WINIFRED J. JOLLY, As the widow of Jack E. Jolly, Deceased, *Appellee,* v. KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Appellant.*

(519 P. 2d 1391)

Opinion filed March 2, 1974.

*Marshall Crowther,* special assistant attorney general, argued the cause, and *Vern Miller,* attorney general, and *Jerry Shelor,* assistant attorney general, were with him on the brief for the appellant.

*Kirke C. Veeder,* of Independence, argued the cause and was on the brief for the appellee.

*George E. McCullough,* of McCullough, Wareheim & LaBunker, of Topeka, was on the brief as *amicus curiae.*

The opinion of the court was delivered by

OWSLEY, J.: The plaintiff, Winifred J. Jolly, was denied accidental death benefits for the death of her husband, Jack E. Jolly, by the Board of Trustees of the Kansas Public Employees Retirement System (hereinafter called KPERS or Board). On review, the district court awarded benefits. The issue on appeal involves an interpretation of K. S. A. 1970 Supp. 74-4916 (2), (now K. S. A. 74-4916 [2]).

Jack E. Jolly was employed by the State of Kansas as a correctional officer. His service commenced August 16, 1967, and he was a member of KPERS on the date of his death. He was thirty-six years old, and on October 11, 1970, he was working as supervisor of the honor camp mobile unit located at Perry Reservoir. His activities as supervisor included supervising other correctional officers assigned to maintain order and discipline; holding disciplinary hearings on serious infractions of rules; and participating in shakedowns of inmates and camp inspections. It was also Jolly's responsibility to see that the inmates followed the work procedures and rules set down by the superintendent of parks and the supervisor of honor camps.

Sworn statements of those who witnessed the events of October 11, 1970, recount that sometime prior to breakfast, Jolly confronted two inmates over a camp rule against wearing sweatshirts as outer garments. It is undisputed that Jolly became extremely angry, that the argument was violent and included abusive language, and all individuals concerned shouted at various times. Exact details are not clear, but there is at least one report by a witness that one of the inmates took off his sweatshirt and threw it at Jolly, striking him in the face. Following this confrontation, Jolly remained visibly angry and left the immediate area. Approximately thirty minutes later, he was found unconscious and was rushed to a hospital in Topeka where he was pronounced dead. The certificate of death lists the immediate cause of death as acute myocardial ischemia and the underlying cause as severe coronary atherosclerosis. The medical evidence was undisputed that Jolly had a pre-existing severe coronary disease.

The plaintiff, Winifred J. Jolly, filed a claim for accidental death benefits pursuant to K. S. A. 1970 Supp. 74-4916 (2) for herself and her four minor children. Accidental death benefits consist of one-half of deceased member's final average salary payable in

monthly installments until the surviving spouse remarries and the youngest child attains age eighteen. After a proper administrative hearing at which Mrs. Jolly was represented by counsel the Board made the following findings:

"7. At the time of his death, Mr. Jolly was suffering from coronary atherosclerosis and had been in this condition for a period of years.

"8. Mr. Jolly's death was not attributed to any physical activity. The emotional stress and strain to which he was subjected on the day of his death was of a nature that a normal individual would not have suffered any serious results.

"9. Mr. Jolly's death was not, independent of all other causes, the result of an accident arising out of and in the course of his actual performance of duty in the employ of a participating employer as required by K. S. A. 1971 [sic] Supp. 74-4916 (2)."

The plaintiff's appeal was considered on the record made before the Board. Pursuant to motions for summary judgment and briefs of counsel for both sides, the trial court reversed and KPERS appeals from that decision.

The Kansas Public Employees Retirement System Act was enacted in 1961 (K. S. A. 74-4901, *et seq.* [Vol. 5, 1964]). The original act provided that upon the death of a member before retirement, his accumulated contributions would be paid to his beneficiary (K. S. A. 74-4916 [Vol. 5, 1964]). In 1965 the legislature broadened the death benefits by enactment of Section 4, Chapter 446, Laws of 1965. In 1967 the legislature again amended the statute by enactment of Section 3, Chapter 427, Laws of 1967, which provides:

"(1) Upon the death of a member before retirement, his accumulated contributions shall be paid to his beneficiary.

"(2) (*a*) In the event that a member should die before retirement as a result of an accident arising out of and in the course of his actual performance of duty in the employ of a participating employer *independent of all other causes* and not as the result of a willfully negligent or intentional act of the member, an accidental death benefit shall be payable if a report of the accident, in a form acceptable to the board, is filed in the office of the executive secretary of the board within sixty (60) days after the date of the accident causing such death and an application for such benefit, in such form and manner as the board shall prescribe, is filed in the office of the executive secretary of the board within two (2) years of the date of the accident, but the board may waive such time limits for a reasonable period if in the judgment of the board the failure to meet these limits was due to lack of knowledge or incapacity: *Provided,* That the board finds from such evidence as it may require, to be submitted in such form and manner as it shall prescribe, that the natural and proximate cause of death was the result of an accident

arising out of and in the course of the member's employment with a participating employer *independent of all other causes* at a definite time and place. Such accidental death benefit shall be an annual amount of one-half (½) of the member's final average salary to accrue from the first day of the month following the date of death and payable in monthly installments or as the board may direct to the surviving spouse of such deceased member, such payments to continue so long as such surviving spouse shall live or until such surviving spouse remarries or if there is no surviving spouse, or in the case the spouse dies or remarries before the youngest child of such deceased member attains age eighteen (18), then to the child or children of such member under age eighteen (18), divided in such manner as the board in its discretion shall determine, to continue until the youngest surviving child dies or attains age eighteen (18). All payments due hereunder to a minor shall be made to a legally appointed guardian of such minor as provided in K. S. A. 74-4902 (7).

*"(b) In construction of this section of the act there shall be no presumption that the death of the member was the result of an accident nor shall there be a liberal interpretation of the law or evidence in favor of the person claiming under this subsection. In the event of the death of a member resulting from a heart, circulatory or respiratory condition there must be clear and precise evidence that death was the result of an accident independent of all other causes which arose out of and in the course of the member's actual performance of his duties in the employ of a participating employer."* [Italics supplied.]

The italicized provisions of the statute were added by the 1967 amendment. The 1965 statute is revealed by eliminating the italicized provisions. In *Shapiro v. Kansas Public Employees Retirement System*, 211 Kan. 452, 507 P. 2d 281, the plaintiff claimed death benefits under the 1965 statute. Shapiro's death was due to an acute coronary occlusion occurring in the office of his attending physician. We permitted recovery on the ground the 1965 statute was similar to provisions of the Workmen's Compensation Act, and our decisions under that act were persuasive. We pointed out that under the Workmen's Compensation Act we had construed "accident" to include "accidental result," and benefits were not limited to "accidental cause." We also stated that even though death may be from a routine performance of duty not in any sense accidental, recovery is granted if the effect of the work was unexpected, undesigned and sudden, and therefore accidental, citing *Meyers v. Consolidated Printing & Stationery Co.*, 201 Kan. 806, 443 P. 2d 319.

This court is committed by a long line of decisions to a liberal construction of the Workmen's Compensation Act in order to award compensation where it is reasonably possible to do so. (See

Hatcher's Kansas Digest, Workmen's Compensation, § 4 [Rev. Ed. Vol. 5 and Rev. Ed. Perm. Supp. Vol. 4-6].) The definition of "accident," in *Shapiro*, undoubtedly resulted from this rule of construction. Although the definition is a broad and liberal one, we do not question the rationale of the court in *Shapiro* in employing the workmen's compensation concept of accident.

We are, however, now faced with the construction of an act which legislative direction states shall not be subject to liberal construction. The fundamental rule of statutory construction to which all mere rules of interpretation are subordinate is that the intent of the legislature, when ascertained, must govern. (*State v. Bancroft*, 22 Kan. 170.) It is the duty of the court to ascertain and make effective the legislative will rather than determine what the law should or should not be. (*Denton v. West*, 156 Kan. 186, 131 P. 2d 886.)

It is obvious the legislature, by the 1967 amendment, intended to restrict the coverage of accidental death benefits. In view of its prohibition against liberal construction, we must conclude the legislature was attempting to prevent the liberal rules of construction applied in workmen's compensation cases from being applied to the accidental death benefit provisions of KPERS. In view of this, we feel we have been directed to re-examine the construction placed on "accident" in the *Shapiro* case. The "accidental result" concept we applied in *Shapiro* to permit recovery of death benefits must be re-examined in the light of the amendment.

We believe the elimination of the "accidental result" concept would be a reasonable interpretation of the legislative will. Absent "accidental cause" the effect of this construction would eliminate recovery of benefits for death resulting from pre-existing dormant diseases or physical infirmities, even though aggravated by normal work-related activities. It follows that accidental death benefits under the 1967 amendment would be limited to accidental causation. We have defined "accident" in cases other than workmen's compensation in the following language:

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. . . ." (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, p. 773.)

Any effort to further define "accident" requires consideration of language used in the amendment that reveals legislative intent. Some significance must be given to the requirement that the accident occur at "a definite time and place." The elimination of liberal interpretation and the "accidental result" concept places around this phrase a connotation which destroys the reasoning employed in its construction in *Shapiro*.

We have attempted to give consideration to the language of the amendment and each part thereof with regard for its general purpose. This, combined with what we have said with relation to the meaning of the word "accident" in many decisions of this court, dictates what we believe are reasonable results. We conclude the 1967 amendment intended to eliminate accidental death benefits for "accidental result" and to provide benefits for death from "accidental cause." Death benefits are recoverable when death is a direct and natural result of an accident. An accident is a sudden and unexpected incident occurring at a definite time and place. The routine, normal, and expected occurrences in the course and scope of a member's employment are not "accidents" under the amendment.

The incident out of which this claim arose must be tested in the light of the foregoing. The decedent was charged with the duty of maintaining order and discipline. This duty could only be fulfilled by confrontations with inmates. Such confrontations were necessarily expected. To label such confrontations as "accidents" would require a liberal construction which the amendment prohibits. In view of this, we must deny accidental death benefits to the plaintiff and reverse the decision of the trial court.

The defendant urges we construe the requirement that death be the result of an accident "independent of all other causes" to prevent recovery when a pre-existing physical condition contributes to the death. The provisions of subsection (2) (*b*) of the act are contrary to this construction. Subsection (2) (*b*) provides there must be clear and precise evidence that death was the result of an accident "independent of all other causes" before accidental death benefits can be recovered when a member dies as a result of a heart, circulatory or respiratory condition. This provision contemplates there may be recovery even though there is a pre-existing heart, circulatory or respiratory condition. To construe the phrase, "independent of all other causes," in the manner urged

by defendant would have the effect of nullifying the right to recovery given by subsection (2) (b) upon proof that death was the result of an accident as defined herein.

The foregoing is consistent with *Williams v. Benefit Trust Life Ins. Co.,* 200 Kan. 51, 434 P. 2d 765, and *Boring v. Haynes,* 209 Kan. 413, 496 P. 2d 1385. Each of these cases involves a claim of an insurance company that a dormant disease or physical infirmity which contributes to the death or disability of an insured is a defense to an action for accidental bodily injury or death. In *Williams,* it was said:

"Where an accidental injury activates or aggravates a dormant disease or physical infirmity, the accident may be said to have been the proximate cause of the resulting disability within the usual provisions and ordinary meaning of a policy insuring against accident.

"In the event an insured sustains physical disability resulting from an accidental injury which aggravates or causes a dormant disease or ailment to become active, the disability will be regarded as having been caused solely by the injury, so as to render an insurer liable therefore under an accident policy, even though such disability might later have resulted regardless of the accident, and even though the accident might not have affected a normal person to the same extent." (Syl. ¶¶ 1 and 2.)

The judgment is reversed with directions to enter judgment for the defendant.