(898 P.2d 1188)

No. 71,494

JAMES R. MILLER, *Appellant,* v. BOARD OF TRUSTEES OF THE KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Appellee.*

316 

 Opinion filed
July 21, 1995.

*Clarence L. King, Jr.*, and *John A. O'Leary*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, for appellant.

*Mary Ann Heckman*, assistant attorney general, and *Robert T. Stephan*, attorney general, for appellee.

Before ELLIOTT, P.J., BRAZIL and LEWIS, JJ.

ELLIOTT, J.: James Miller appeals the Kansas Public Employees Retirement System's (KPERS) denial of his service-related disability application under the Kansas Police and Firemen's Retirement System Act (KP&F), K.S.A. 74-4951 *et seq.*

We affirm in part, reverse in part, and remand.

The facts are somewhat involved. Miller became a Salina police officer in 1971; he later developed hip problems due to his prior use of steroids, which led to total replacements of his left hip in 1979 and his right hip in 1980. In 1987, Miller suffered a heart attack.

Following each of these setbacks, Miller returned to his duties as a police officer. He later developed more problems with his left hip, which was again replaced on February 13, 1991 (the cement which was to hold the replacement hip in place had broken down). After returning to work following this latest surgery, he complained to a supervisor he was suffering stress and doubted he could adequately perform as a police officer. Miller visited a psychologist to discuss the problem.

In June 1991, Miller filed an application for disability retirement, claiming three service-related disabilities: his hips, the heart attack, and the stress-related psychological problems. He claimed the date of his total disability was February 13, 1991, the date of his last hip surgery.

Miller submitted medical reports from three doctors on pre-printed KPERS forms. Each of the doctors reported the disabilities were not "a result of an accident or act of duty on-the-job." KPERS forwarded the reports to its consulting doctor, Benson Powell. Dr.

Powell opined that while Miller was totally disabled, none of his disabilities was service related.

Two of Millers' three doctors then submitted additional letters, indicating the disabilities were service related. Dr. Powell again recommended that KPERS deny Miller's application. Miller then requested a hearing; the hearing officer denied Miller's application.

The KPERS Board of Trustees affirmed the hearing officer's decision, and Miller appealed to district court, which affirmed the KPERS decision. This appeal followed.

### The Statutory Framework

This appeal is governed by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Under the Act, Miller bears the burden of proving the invalidity of KPERS' actions. See K.S.A. 77-621(a)(1).

In this regard, a court may grant relief only when it has made certain determinations, among which are that the agency has erroneously interpreted or applied the law or that the agency acted unreasonably, arbitrarily, or capriciously. *In re Tax Appeal of Chief Industries, Inc.*, 255 Kan. 640, 643-44, 875 P.2d 278 (1994).

The KP&F provides the procedure for police officers to seek disability retirement. K.S.A. 74-4960(1) provides:

"If any active contributing member becomes totally and permanently disabled due to service-connected causes as defined in subsection (10) of K.S.A. 74-4952 and amendments thereto, such member shall be retired and the following benefits shall become payable and shall continue until the member's death or until the member recovers from the disability if: A report of the event in a form acceptable to the board is filed in the office of the executive secretary of the board within 220 days after the date of the event or act of duty causing such disability; and an application for such benefit, in such form and manner as the board prescribes, is filed by the member or the member's authorized representative in the office of the executive secretary of the board within two years of the date of the disability."

"Disability" is defined as "the total inability to perform permanently the duties of the position of a policeman or fireman." K.S.A. 74-4952(2).

"Service connected," as used in K.S.A. 74-4960(1), requires the physical or mental disability to result from external force, violence,

or disease occasioned by an act of duty as a police officer. See K.S.A. 74-4952(10).

Finally, Miller contends that KPERS has stipulated he became totally disabled because of his hip, heart, and psychological problems. We can find nothing in the record to support the existence of such a stipulation. Dr. Powell, KPERS' consultant, believed Miller was disabled due to his hip problem, but not due to his heart condition.

### The Claims of Disability

#### The Hips

Miller argues that but for his police duties, he would not have suffered the hip disability; KPERS argues that while police activities might have contributed to the deterioration of Miller's hip replacement, routine activities not job related could have equally contributed to the problem.

In finding Miller's hip problem was not service connected, the hearing officer seems to have placed significance on the fact Miller could point to no specific act or event that led to the latest hip surgery. The hearing officer erred in interpreting K.S.A. 74-4952(10) to require a showing that a specific act or event caused the disability.

The only cases construing the KP&F do not deal with service-connected disabilities. See *Brazelton v. Kansas Public Employees Retirement System*, 227 Kan. 443, 607 P.2d 510 (1980); *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467 (1980). Thus, the meaning of "occasioned by an act of duty" is an issue of first impression.

K.A.R. 80-50-1 defines "occasioned by an act of duty" as meaning "that the disability is the natural and proximate result of an accident causing personal injury or disease, arising out of and in the course of the member's actual performance of his duties as a policeman or fireman."

This language is similar to that found in the Workers Compensation Act which provides coverage for employees suffering personal injury by accident arising out of and in the course of employment. See K.S.A. 44-501(a).

The KP&F does not contain a liberal construction provision, as does the Workers Compensation Act. See K.S.A. 44-501(g). The KP&F, however, is remedial in nature and therefore should be liberally construed. See *City of Lakin v. Kansas Employment Security Bd. of Review*, 19 Kan. App. 2d 188, 190, 865 P.2d 223 (1993).

In *Shapiro v. Kansas Public Employees Retirement System*, 211 Kan. 452, 457, 507 P.2d 281 (1973), the court held that workers compensation cases should be viewed as persuasive in construing a portion of the KPERS statute.

The *Shapiro* rule was changed in *Jolly v. Kansas Public Employees Retirement System*, 214 Kan. 200, Syl. ¶ 1, 519 P.2d 1391 (1974), because the particular statute involved in *Shapiro* had later been amended to expressly prohibit a liberal construction. The rationale for the *Shapiro* rule, however, is still valid: "[W]here statutes are similar in form and substance and are intended for substantially the same purpose, decisions construing one are material in determining rights and liabilities under the other." *Shapiro*, 211 Kan. at 467.

In the present case, the language of K.A.R. 80-50-1 is quite similar to that of K.S.A. 44-501(a). Accordingly, cases construing the Workers Compensation Act are helpful in determining whether the hearing officer was correct in requiring Miller to show a specific act or event of police duty caused his hip replacement to degenerate.

At oral argument, the attorney general acknowledged the propriety of using workers compensation cases for guidance.

Under the Workers Compensation Act, a *series* of traumas leading to disease or injury is compensable. If an " 'injury occurring as the result of a single accident is compensable, surely we will not declare that injury resulting from a dozen or more of the same or similar accidents, all occurring in the course of employment, is noncompensable.' " *Murphy v. IBP, Inc.*, 240 Kan. 141, 144, 727 P.2d 468 (1986) (quoting *Downes v. IBP, Inc.*, 10 Kan. App. 2d 39, 41, 691 P.2d 42, *rev. denied* 236 Kan. 875 [1984]).

We therefore hold the language in K.S.A. 74-4952(10) providing that a disability, to be service connected, must result from "an act

of duty" surely must include a disability caused by a series of accidents, as contemplated by cases under the Workers Compensation Act.

Our holding that the hearing officer erroneously interpreted the law to require Miller to show a specific act to support his disability claim does not end our inquiry. The erroneous interpretation of the law becomes immaterial if substantial evidence supports KPERS' ultimate decision to deny Miller's hip claim.

We have found two cases dealing with firefighters claiming service-related disabilities, but neither was decided pursuant to the KP&F. In *Timmons, Administrator v. McGaughey,* 193 Kan. 171, 392 P.2d 835 (1964), plaintiff claimed his heart problem was related to his job as a firefighter. The evidence was conflicting as to whether plaintiff's problem had been aggravated by his job. The Board of Trustees of the Firemen's Pension Fund denied his claim, and the district court and Supreme Court affirmed.

In *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 212 Kan. 137, 510 P.2d 160 (1973), the board denied the disability claim due to lapse of time between the date of injury to the plaintiff's back and the date he sought treatment. The board found any back problem plaintiff had was not service connected. The district court ruled the board's finding was not supported by substantial competent evidence and the Supreme Court affirmed that ruling. 212 Kan. at 144-45; see also *Woltje v. Kansas Public Employees Retirement System,* 225 Kan. 495, 592 P.2d 872 (1979) (heart attack case decided under statute expressly prohibiting liberal construction); *Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 396, 479 P.2d 860 (1971) (statutory language regarding "act of duty" identical to K.A.R. 80-50-1; court looked to workers compensation cases for guidance).

Workers compensation cases cover a wide spectrum of holdings. In *Bennett v. Wichita Fence Co.,* 16 Kan. App. 2d 458, 460, 824 P.2d 1001, *rev. denied* 250 Kan. 804 (1992), we held that where an injury results from the concurrence of some idiopathic condition and some hazard of employment, compensation is generally allowed.

In *Claphan v. Great Bend Manor*, 5 Kan. App. 2d 47, 611 P.2d 180, *rev. denied* 228 Kan. 806 (1980), the employee had a tumor in or on her spine, and deterioration of her condition was inevitable; however, her lifting efforts accelerated the deterioration by three to six months. Thus, she was entitled to full disability.

In *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 377-78, 573 P.2d 1036 (1978), claimant was entitled to benefits because the evidence left no doubt heavy lifting at work aggravated a preexisting condition.

At the other end of the spectrum is *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 504 P.2d 625 (1972), which is fairly analogous to the present case. There, claimant had arthritis of the hips, a condition which worsens over time regardless of activity. Claimant injured his back and filed a claim for both the back and the hip problems. His claim for the hip problem was denied. 210 Kan. at 733-34. The court stated:

"This brings us again to the heart of the case—the essence of claimant's contention. The claimant would have this court hold that the ordinary movements and motions of his daily work, the bending, stooping and twisting as he puts it, were tantamount to a continuous series of minuscule accidents which eventually, over the years, culminated in his permanent disability, thus entitling him to compensation as from a work-related accident. This contention essentially amounts to the argument that the physical, commonplace, day to day activities of a person's employment, whatever they may be, as they continue to nibble and wear away the bones, joints and tissues which once were strong and sturdy in the early days of youth bring in their wake an endless succession of minute compensable accidents unrelated to time, place or circumstance. In our opinion this philosophy is not encompassed within the boundaries of the Workmen's Compensation Act and we decline to give the act such a construction." 210 Kan. at 739.

The present case lies somewhere between *Boeckman*, where no evidence showed claimant's work aggravated his situation, and *Bennett, Claphan,* and *Demars*, where relatively clear evidence showed that job-related activity aggravated or accelerated a preexisting condition.

The term "substantial evidence" in workers compensation cases means "evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from

which the issue tendered can be reasonably resolved." *Angelton v. Starkan, Inc.*, 250 Kan. 711, Syl. ¶ 3, 828 P.2d 933 (1992).

The only evidence of what might have caused Miller's hip to loosen was Dr. Powell's testimony, which was equivocal at best. Further, Miller bore the burden of proving his disability was service connected.

The evidence of whether Miller's hip problem is service connected was conflicting. We are unable to hold that KPERS erred in ruling, in effect, Miller failed to meet his burden.

KPERS' action in denying Miller's claim was supported by the evidence.

### The Heart

Miller next argues his heart disease is a service-connected disability.

K.S.A. 74-4952(10) treats heart disease differently from other service-connected disabilities, providing a presumption that the heart disability is service connected. The statute provides that a service-connected disability includes any disability resulting from a heart disease, provided the officer has five years of credited service.

Since Miller had five years of service, the only question is whether Miller's heart disease amounts to a disability.

On the KP&F form, Miller's doctor diagnosed Miller as having coronary artery disease, osteoarthritis, depression, and possible alcoholism. He also checked "no" to the question of whether the disability resulted from an accident or act of duty. Later, Dr. Krehbiel wrote that because of his duties as a police officer, Miller "is at increased risk for subsequent myocardial infarction and angina pectoris."

Miller's medical records indicate he complained to his doctor about chest pains, but he performed his duties as a police officer after his heart attack without any problems associated with the heart disease. Dr. Powell testified he did not believe Miller was disabled due to his heart.

The hearing officer and the district court made essentially the same findings: Although Miller qualifies for the service-connected

presumption, Miller's heart disease was not disabling. The district court found there was no evidence that Miller could not perform his duties as a result of heart disease and, in fact, until his retirement, he had been performing those duties.

Simply put, one cannot have a service-connected disability heart condition unless he or she is *disabled* by virtue of that heart condition.

Substantial evidence supports KPERS' denial of Miller's heart disability claim.

### The Psychological Problems

Finally, Miller asserts he has a service-connected psychological disability. Unlike the Workers Compensation Act, K.S.A. 74-4952(10) specifically provides for mental disabilities.

In denying Miller's claim, the hearing officer found: "There was no evidence submitted at the hearing of a report being filed within 220 days of *any specific incident and date* outlining an event or act of duty that cause these psychological problems." (Emphasis added.)

Therein lies the problem. We have already held that, analogous to workers compensation claims, a *series of events* can cause a disability. That being the case, Miller is not required to point to a specific incident or date that caused or related to his psychological problems. Miller filed his application within 220 days of his last day of work—and that suffices. See *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, Syl. ¶ 3, 855 P.2d 1261 (1994) (date of act or occurrence in workers compensation action involving carpal tunnel syndrome is last day of work).

Because of our holding on this issue, we need not detail the evidence. Suffice it to note, the KP&F form does not lend itself to a showing of anything other than a specific event or date. The language of the form question simply does not envision the problem could arise as a result of a series of events. Further, Dr. Powell testified he is not a mental health expert and must rely on the information he gets from experts in formulating his recommendation to KPERS.

Dr. Powell simply did not know whether Miller's psychological problems were job related: "I felt that he undoubtedly had been under a lot of stress as a policeman. No question about that. Whether that had caused him to be disabled in and of itself I don't know. But undoubtedly he had experienced a lot of stress."

Because the KP&F forms do not lend themselves to a consideration that a series of events can result in a service-connected psychological disability, the testimony and evidence were likewise not couched in terms of a series of events. Accordingly, we reverse the holding with respect to the psychological disability and remand to the district court with directions to remand to KPERS and/or a hearing officer for reconsideration of Miller's claim in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.