TAYLOR MACHINERY CORPORATION *v.* BRENT

No. 43047          May 11, 1964          163 So. 2d 747

*Norman B. Gillis, Jr.,* McComb, for appellant.

*Roach & Roach,* McComb, for appellee.

GILLESPIE, J.

This is a suit by the Taylor Machinery Corporation of Jackson, hereinafter called Taylor, against Bill Brent, hereinafter called Brent. The jury returned a verdict for the defendant and the plaintiff appealed.

On March 23, 1961, an oral agreement was made between Vickers, as agent of Taylor, and Brent whereby Taylor would sell to Brent certain sawmill machinery for the sum of $6939. It was agreed that Brent would be allowed $1896 for the trade-in of a used diesel engine then being used by Brent. It was agreed that the used engine which was being traded could be used by Brent until such time as the new machinery was set up ready for operation. Pursuant to this agreement, the new machinery was delivered to Brent's sawmill site in Pike County on May 9, 1961. On May 12, Vickers delivered the invoice to Brent. The invoice showed the various items sold, together with the purchase price of each item and a credit for the tradein of the used engine in the amount of $1896, leaving a balance due of $5,093, which, according to the original agreement made on March 23, was to be paid in cash upon delivery of the machinery. Brent paid the cash due on May 12, less

an amount withheld pending receipt of a warranty on a part of the machinery, which amount was subsequently paid. The used engine was still being used by Brent on May 12, and was still attached to Brent's old machinery on May 14th, the used engine burned in a fire that destroyed certain other property belonging to Brent.

After Taylor learned of the burning of the used engine, it prepared and sent to Brent a revised invoice dated May 17, 1961, which did not show the credit of $1896 for the used engine. There was no specific agreement as to the date Taylor was to take title to the used engine traded in by Brent, but the jury was warranted in finding that Brent was ready and willing to deliver to Taylor's truck driver the used engine at about nine o'clock on the night of May 9th when the new machinery was delivered, but that Taylor's driver did not desire to take the engine back to Jackson that night. The jury was also justified in drawing the inference that the understanding of the parties was that Taylor would send his truck to Pike County to pick up from the sawmill site the used engine and take it to Jackson.

The sole question for decision is whether title to the used engine passed to Taylor before it was burned on May 14, 1961. This is the issue presented to the jury on proper instructions. We are of the opinion that the jury was justified in finding that title to the used engine had passed to Taylor prior to its destruction by fire.

The principal factor controlling the question as to when title to a chattel passes from the seller to the buyer is the intention of the parties where such intention is not expressed clearly by the contract. This question is ordinarily one for the jury. 46 Am. Jur., Sales, Sec. 413, pages 585-586. In the instant case, nothing was to be accomplished after May 12, insofar as the passing of title to the trade-in engine was con-

cerned, if anything, except delivery. ██ ██ There may be a complete delivery of goods although they remain in possession of the seller if the purchaser assumes such control of the property as reasonably to indicate a change of ownership and nothing further remains to be done by either party to complete the sale. 77 C.J.S., Sales, Sec. 161, p. 886. ██ ██ It is not essential that actual physical delivery of a chattel be made to the purchaser in order to complete delivery. In the early case of Smith v. Nevett, 1 Walk. Rep. 370, it was held that where nothing remained to be done by the vendor there was a constructive delivery of the property. In another old case, Stamps v. Bush, 8 Miss. 255, a debt was paid with 73 bales of cotton which were segregated on Stamps' gin lot, weighed, and the value computed to within a few dollars of what he owed Bush. Thereupon Stamps told his overseer to haul the cotton to the river bank. The cotton burned before anything more was done and the Court held there had been a constructive delivery of the cotton and the debt discharged. There was nothing further to be performed by Stamps except do the gratuitous act of delivering the cotton from the gin lot to the river bank.

In the instant case, it was permissible for the jury to find that it was the understanding of the parties that Taylor would take title to the used engine when the new machinery was delivered and paid for. Vickers, on behalf of Taylor, agreed that the purchaser could thereafter use the used engine until the new machinery was in operation. This was an act of dominion and control over the used engine. Vickers also gave the purchaser permission to sell the used engine and pay over $1896 in cash to the seller. This was also an act of dominion and control and a circumstance tending to show the intention of the parties that title would pass to Taylor when the new machinery was delivered. When the used engine was destroyed by fire, all of

the terms of the sale had long since been agreed upon. The bargain had been struck and everything that Brent agreed to do had been done. The contract of sale as far as the used engine was concerned was executed upon the constructive delivery thereof prior to May 14th, and title was vested in Taylor Machinery Corporation at the time of the fire. At least the jury was justified in so finding.

The case was well tried, the jury was properly instructed, and we do not find any reversible error.

Affirmed.

*Lee, C. J., and Ethridge, McElroy and Rodgers, JJ.,* concur.