No. 48,416

LAKEVIEW GARDENS, INC., *Appellant*, v. STATE OF KANSAS, *ex rel.* CURT SCHNEIDER, Attorney General; KEITH SANBORN, District Attorney for the 18th Judicial District of Kansas, *Appellees.*

(557 P. 2d 1286)

Opinion filed December 11, 1976.

W. A. *Kahrs,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Larry A. Withers,* of the same firm, was with him on the brief for the appellant.

*Robert J. Hornung,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Jon Small,* assistant attorney general, *Keith Sanborn,* district attorney, and *Jack N. Williams* and *Georgia A. Staton,* assistant district attorneys, were with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is a declaratory judgment action brought by Lakeview Gardens, Inc., a cemetery corporation, to obtain judicial interpretation of K. S. A. 16-301 as it may apply to Lakeview's preneed funeral contracts for the sale of caskets. Lakeview unsuccessfully sought to obtain an order of the trial court declaring its contracts for the sale of caskets to be outside the provisions of the statute. The trial court declared the contracts to be covered by the statute and ordered all monies received by Lakeview from such sales to be placed in trust in accordance with K. S. A. 16-301, *et seq.* Lakeview appeals.

The statute provides:

"*Any* agreement, *contract* or plan *requiring the payment of money* in a lump sum or installments which is made or entered into with any person, association, partnership, firm or corporation for the final disposition of a dead human body, or for funeral or burial services, or *for the furnishing of personal property or funeral or burial merchandise, wherein the delivery of the personal property* or the funeral or burial merchandise or the furnishing of professional services by a funeral director or embalmer *is not immediately required, is hereby declared to be against public policy and void, unless all money paid thereunder shall be deposited in a bank or trust company* which is authorized to do business in this state and insured by a federal agency, all as herein provided, and subject to the terms of an agreement for the benefit of the purchaser or said agreement, contract or plan. For the purposes of this act, personal property of funeral or burial merchandise shall include caskets, vaults and all other articles of merchandise incidental to a funeral service, but shall not include grave lots, grave spaces, grave memorials, tombstones, crypts, niches and mausoleums." (K. S. A. 16-301. Emphasis supplied.)

The facts set forth in the following paragraphs of the petition were stipulated by the parties:

"4. Plaintiff offers for sale caskets (i. e., 'Eternal Rest Crypt Beds') which are burial merchandise within the meaning of K. S. A. 16-301, and plaintiff has entered into sales contracts whereby plaintiff has sold to purchasers a substantial number of caskets. A copy of the sales contract is attached hereto, marked as Exhibit 'A' and by reference made a part hereof.

"5. Pursuant to the terms of the sales contract, plaintiff immediately tenders delivery of the casket to the purchaser. The purchaser has the option of removing the casket to such place as he desires or he may direct plaintiff to store it on plaintiff's premises at no charge. However, by electing to have plaintiff store the casket, the purchaser does not waive his right under the contract to take possession of the casket at any time.

"6. Plaintiff has sold a substantial number of caskets pursuant to this contract, having a total retail value of approximately $322,000.00. Each casket is identified with a number. An index book is maintained with the purchasers' name correlated to numbers so that any purchaser's casket can be readily identified."

The contracts for the sale of caskets did not include the cost of mortuary professional services or the expense of opening and closing burial spaces. The sample form of contract attached to the petition is in such form that it can be made to cover the sale of cemetery lots (interment spaces), caskets (burial vaults), bronze memorials, lawn crypts or mausoleum crypts. However, the parties by stipulation have limited the court's consideration of the contracts to an interpretation of the statute as applied to the sale of Lakeview caskets.

The parties agree that the court's interpretation of the statute will necessarily depend in large part upon the efficacy of the following paragraph in the contracts:

"Purchaser hereby acknowledges receipt of the above described burial vault(s) or Eternal Rest Crypt Bed(s) specified above, delivered to Purchaser by Lakeview. Purchaser authorizes and directs Lakeview to store said burial vault(s) or Eternal Rest Crypt Bed(s) free of charge. Purchaser has the right at any time to remove said burial vault(s) or Eternal Rest Crypt Bed(s) from storage."

Our consideration of the contracts is restricted, by facts stipulated, to caskets which have been purchased at wholesale by Lakeview and then resold. Upon execution of each sale contract a casket is immediately tendered to the purchaser. The purchaser then, under terms of the contract, directs Lakeview to store the casket in a warehouse. Each casket when stored is identified by a number affixed thereto. An index book is maintained by Lakeview with the purchaser's name correlated with the number on the casket. The purchaser's casket can be identified in the warehouse by its number, and under the contract he may take possession of the the casket at

any time, although taking actual possession of a casket prior to death would appear somewhat implausible to a normal individual.

In determining whether K. S. A. 16-301 applies to particular contracts under facts stipulated by the parties, this court must ascertain and give effect to the intent of the legislature. In so doing we must consider the language of the statute; its words are to be understood in their plain and ordinary sense. (*Hunter v. Haun,* 210 Kan. 11, 13, 499 P. 2d 1087; *Roda v. Williams,* 195 Kan. 507, 511, 407 P. 2d 471.) When a statute is plain and unambiguous this court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. (*Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, 647, 518 P. 2d 453; *Jolly v. Kansas Public Employees Retirement System,* 214 Kan. 200, 204, 519 P. 2d 1391.)

In the present case both parties insist the statute is clear and unambiguous. The words of the statute to which our attention is called are: "Any . . . contract . . . wherein the delivery of the personal property . . . is not immediately required, is hereby declared to be against public policy and void, unless all money paid thereunder shall be deposited in a bank or trust company . . ."

The appellant, Lakeview, contends its contracts are not those contemplated and covered by K. S. A. 16-301, since the contracts require delivery of a casket at the time each sale is completed.

The appellee contends the words "immediately required" should be interpreted to mean "when needed by reason of the death of the person for whom the casket is purchased." Appellee argues a casket cannot be "immediately required" until a person dies. Therefore all monies paid for caskets must be deposited in trust unless they are purchased on the death of the person whose body will occupy the same.

Both parties rely heavily on quoted portions of our opinion in *State, ex rel., v. Anderson,* 195 Kan. 649, 408 P. 2d 864. Our discussion in that opinion was not limited to the sale of caskets, as it must be in the present opinion. In *Anderson* the provisions of the cemetery corporation contracts examined by this court covered the sale of cemetery lots, the sale of caskets and memorial grave markers and a further provision calling for cancellation of future payments in event of the death of the purchaser. The provision for the sale of cemetery lots was governed by a construction of K. S. A. 17-1311, which is not in our present case. The present contracts for the sale

of caskets contain no provision for cancellation of future payments in event of the death of the purchaser, so we have no insurance question presented. The sale of memorial grave markers has likewise been eliminated from our consideration by the stipulation of the parties. We will discuss other distinguishing features of the *Anderson* case as we examine the present contract.

The statute with which we are concerned relates to agreements, contracts or plans for the sale of prearranged burial merchandise. Certain contracts are declared against public policy and void unless all money paid under them is placed in trust. The reason for the concern of the legislature in this area is explained in *Anderson*. The concern of the legislature expressed by this statute emanated from the possibility for fraud which can arise from sales of burial merchandise to young persons where the purchase price is collected long in advance of any actual need for such merchandise. Because of the time lag between the time of bargaining and the time of performance requiring delivery of the merchandise there are hazards not present in ordinary retail sales. Not only do such sales present opportunities for fraud and deceit but delivery of the merchandise may become impossible of performance when a seller has suffered economic woes and has gone out of business. The purpose of requiring that purchase price payments be held in trust is to assure those who purchase preneed caskets and burial merchandise that they will have either the benefit of their purchase, the merchandise, or their money back at the time the need for the merchandise occurs.

The legislature did not restrict all sales of caskets. It is only those sales wherein the delivery of the casket is not immediately required that fall within the restriction. An intent to restrict all preneed contracts for the sale of caskets could have been clearly expressed without reference to delivery, if such was the intent of the legislature.

When we examine the statute it restricts any contract wherein delivery of burial merchandise is not immediately required. The word "wherein" relates back to "any agreement, contract or plan" for they are the subjects of the 149 word sentence by which the legislature expressed its intent. Under the Lakeview contracts the purchaser acknowledges that the casket he purchased has been delivered to him. In the contract he then authorizes and directs Lakeview to store the casket for him. Storage is free of charge. Each casket bears the identifying number of the purchaser, and

the casket may be removed from storage by the purchaser at any time.

In *State, ex rel., v. Anderson,* supra, no casket was delivered, constructively or otherwise, and the purchaser had no claim to a casket until he had completed all payments on the contract. In *Anderson* ninety percent of the sales were on an installment payment basis extending for as long as six years. Those sales covered both a casket and a memorial grave marker. No merchandise was on hand and the cemetery corporation could collect and use the purchase money for any purpose it desired. There was nothing in the Anderson contract which required them to purchase the merchandise to fulfill their contract until after full payment and demand was made.

In the present case Lakeview has paid for and acquired the caskets. A casket is tendered to each purchaser when the contract of sale is executed regardless of whether the sale is for cash or on installments. Each casket is identified by number correlated to the name of each purchaser and placed in a warehouse where each is immediately available to the purchaser on request.

The appellee argues that Lakeview has attempted to subvert the language and spirit of the act by providing in the contract for constructive delivery of the casket. We must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. The restriction in the statute relates to contracts wherein the *delivery* is not immediately required. So the primary question would seem to be whether there was a sufficient delivery to remove the sale from the trust provisions of the statute.

The acts and facts which will constitute delivery of property vary in different classes of cases and depend upon the character, quantity and condition of the property, as well as the circumstances of the particular case. (*Galemore v. Mid-West National Fire & Cas. Ins. Co.,* [Mo. 1969] 443 S. W. 2d 194; 26A C. J. S., Delivery, p. 165.)

Delivery may be either actual or constructive. Constructive delivery is a general term comprehending all those acts which, although not truly conferring a real possession on the vendee, have been held by construction of law equivalent to acts of real delivery. (*Galemore v. Mid-West National Fire & Cas. Ins. Co.,* supra; 77 C. J. S., Sales, § 155, p. 881.) A constructive delivery is effectuated

when, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any supposition other than that there has been a change in the nature of the holding. (*Swafford v. Spratt,* 93 Mo. App. 631, 635, 67 S. W. 701.)

There may be a completed delivery although the goods remain in the possession of the seller if the seller's possession is as an agent or at the request of the buyer under an agreement to store or care for the property, and nothing further remains to be done by either party to complete the sale. (*Taylor Machinery Corp. v. Brent,* 249 Miss. 704, 709, 163 So. 2d 747; *Brewton et al. v. Woodall et al.,* 92 Ga. App. 714, 89 S. E. 2d 835; 77 C. J. S., Sales, § 161, p. 886.)

In *Brewton et al. v. Woodall et al.,* supra, a commission merchant after holding an auction sale set aside bags of pecans in a special area of a warehouse allotted to the vendee. Numbers were placed upon the bags to indicate they were the property of the vendee. It was held the sale of pecans to the vendee was complete and title passed when the bags were identified and segregated since this constituted constructive delivery of the pecans.

Under the facts stipulated in the present case we have a written contract of sale in which the purchaser acknowledges the casket purchased has been tendered to him and the purchaser then authorizes Lakeview to store the same for him. The casket is set aside and identified by a number correlated with the purchaser's name in a book kept for that purpose. Under these facts constructive delivery to the purchaser has been effectuated.

The statute (K. S. A. 16-301) speaks merely in terms of delivery. Both actual and constructive delivery are recognized in the law. Had the legislature intended to void a contract for the sale of burial merchandise wherein delivery was constructive only it could easily have so declared in clear and unmistakable terms. It did not do so. Therefore this court must give effect to the language of the statute as the words are understood in their ordinary sense. It is our duty to determine the intention of the legislature as expressed rather than determine what the law should or should not be.

Both parties rely upon certain abortive legislative proceedings which occurred in 1963 and 1966 in the area of prearranged or preneed funeral contracts. The wording of the statute which is

being considered in the present case has remained unchanged, for all practical purposes, since its enactment in 1953. The change adopted by the legislature in 1973 merely added the last sentence of K. S. A. 16-301 defining burial merchandise. The change in 1976 merely added savings and loan associations to those financial institutions authorized to accept trust monies. The legislative committee reports and proposed changes in 1963 and 1966 were never brought to a vote of the legislature and we fail to see the significance of such abortive proceedings as an aid to interpreting the 1953 law. In interpreting the provisions of the 1953 law we seek to determine the intent of the legislature in 1953, not at some later time.

Accordingly we hold under the facts as stipulated by the parties in this particular case Lakeview's contracts for the sale of caskets do not fall within the purview of K. S. A. 16-301. The monies received from the sale of caskets actually or constructively delivered to the purchasers do not have to be placed in trust.

Judgment reversed.

PRAGER, J., dissenting: I respectfully dissent. In my judgment the state is correct in its position that the words "immediately required" in K. S. A. 16-301 should be interpreted to mean "when needed by reason of the death of the person for whom the casket is purchased." A casket usually is not "immediately required" until a person dies. As pointed out in the majority opinion the concern of the legislature expressed by the statute emanated from the possibility of fraud which can arise from sales of burial merchandise to young persons where the purchase price is collected long in advance of any actual *need* for such merchandise.

In *State, ex rel., v. Anderson,* 195 Kan. 649, 408 P. 2d 864, we held that when cemetery lots and burial vaults are sold by a cemetery corporation upon installment contracts such corporation is required to comply with the statutory provisions for the protection of the purchasers. I see no logical reason to distinguish between cemetery lots, burial vaults, and caskets. In the case of burial lots the cemetery corporation may execute a deed and vest immediate title in the purchaser of the lots. Upon the execution and delivery of the deed the fee title to the lot would normally pass to the purchaser. In *Anderson* we construed the statute then effective to mean that when money is received in installments by

defendants pursuant to an installment contract for the sale of a lot—whether a deed is delivered or not and whether the sale is to be deemed technically completed or not—at least ten percent of such installment payment shall be set aside for the permanent maintenance fund. The same rationale should be applied in this case to the sale of caskets on an installment basis. Such sales present opportunity for fraud and deceit in the same way that preneed sales of cemetery lots or burial vaults present such a hazard. The opinion of the majority in my judgment has subverted the spirit and language of the statute by permitting the installment sale of caskets where the purchase price is collected long in advance of any actual need for such merchandise.

SCHROEDER, J., dissenting: I respectfully concur in the dissenting opinion of Justice Prager, but feel compelled to advance one additional argument which in my opinion clarifies the legislative intent. While this case on the facts here presented deals with contracts for the sale of caskets, and does not include the cost of mortuary professional services, the provisions of K. S. A. 16-301, set out in the majority opinion, must be fully considered.

K. S. A. 16-301 requires:

"Any . . . contract . . . requiring the payment of money . . . wherein . . . *the furnishing of professional services by a funeral director* or embalmer *is not immediately required,* is hereby declared to be against public policy and void, unless all money paid thereunder shall be deposited in a bank or trust company. . . ." (Emphasis added.)

Obviously, there can be no constructive delivery of professional services. In this situation the clear intent of the statute is that the words "immediately required" should be interpreted to mean "when needed by reason of the death of the person for whom the services were purchased." Given this required construction of the statute relative to professional services, the same construction must be applied to contracts for the sale of caskets in the case at bar. A statute must be construed so it is internally harmonious. (*Board of Park Comm'rs, City of Wichita v. State, ex rel.,* 212 Kan. 716, 512 P. 2d 1040; *State v. Sumner,* 169 Kan. 516, 219 P. 2d 438; and 73 Am. Jur. 2d, Statutes, § 191, pp. 389-390.)

The construction given the statute in question by the court requires the court to recognize that the words "immediately re-

quired" have a dual meaning. In my opinion, this is an erroneous construction of the statute.

MILLER, J., joins in the foregoing dissenting opinions.