(687 P.2d 37)
No. 55,853

STATE OF KANSAS and CITY OF OBERLIN, KANSAS, *Appellees,* v. RUS-SELL RAULSTON, *Appellant.*

Opinion filed September 20, 1984.

*William L. Winkley,* of Salina, for the appellant.

*John E. Bremer,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee State of Kansas.

*Terry L. Rogers,* of Oberlin, for the appellee City of Oberlin, Kansas.

Before PARKS, P.J., REES and SWINEHART, JJ.

SWINEHART, J.: Russell Raulston, defendant, appeals from a jury verdict which found him guilty of operating an unregistered motor vehicle.

During a two-month period, defendant received three tickets from officers of the Kansas Highway Patrol, and four tickets from officers of the Oberlin Police Department for operating an unregistered vehicle in violation of K.S.A. 8-142 and Oberlin city ordinances. Defendant's trial on the tickets issued by the city police ended in a conviction in the municipal court of the City of Oberlin. Defendant appealed the municipal court conviction to the District Court of Decatur County, where the four city charges and the three state charges were then consolidated for the jury trial, with the defendant appearing pro se.

Given an opportunity to challenge the jury panel for cause,

defendant stated: "I think there is a lot of people around here that knows why I'm here. It's a tax issue, it's not a traffic issue." The court removed the jury to allow Mr. Raulston to present his argument that he had not been allowed to register his vehicle because of his refusal to pay "unjust taxes." The court stated that issues of tax were not proper jury questions and cautioned defendant not to raise such issues in front of the jury. At trial defendant neither performed cross-examination nor presented evidence in his own behalf, and was convicted on all seven charges.

Defendant, still acting pro se, filed motions for a new trial suggesting that the court had erred in failing to consider the constitutionality of K.S.A. 8-173. The court considered and denied defendant's motions. Defendant then retained counsel and now appeals to this court.

Defendant clearly raised at trial the issue of the constitutionality of K.S.A. 8-173. The court dismissed the prospective jurors, listened to arguments of defendant and the State, and properly ruled that the issue presented a question of law for the court and not a question of fact for the jury. See *State ex rel. Stephan v. Board of Lyon County Comm'rs,* 234 Kan. 732, 738, 676 P.2d 134 (1984). By proceeding to the merits of the case against defendant, the court tacitly upheld the constitutionality of the statute in question.

The issue on appeal is whether K.S.A. 8-173 violates the equal protection clause of the Fourteenth Amendment by requiring proof of payment of all personal property taxes levied against a person for the preceding year before that person may register a motor vehicle.

K.S.A. 8-173 provides:

"A county treasurer shall not accept an application for registration of a vehicle as provided in chapter 8, article 1, of the Kansas statutes annotated and amendments thereto, unless the person making such application shall exhibit to such county treasurer:

"(a) A receipt showing that such person has paid *all personal property taxes levied against such person for the preceding year,* including taxes upon such vehicle: *Provided,* If such application is made before June 21 such receipt need show payment of only one-half the preceding year's tax; or

"(b) Evidence that such vehicle was assessed for taxation purposes by a state agency, or was assessed as stock in trade of a merchant or manufacturer, or was otherwise assessed and taxed, or was exempt from taxation under the laws of this state." (Emphasis supplied.)

Defendant exhibited no evidence that his vehicle was exempt from taxation or had already been "assessed and taxed" so as to fall within subsection (b), and was therefore required to show evidence of payment of all personal property taxes levied against him for the preceding year (*i.e.*, delinquent taxes) as a condition precedent to registration of his vehicle. See K.S.A. 1983 Supp. 79-2004a; K.S.A. 1983 Supp. 79-5106(a); K.S.A. 8-174; 8-175. Accord K.S.A. 8-136(c).

Although K.S.A. 8-173 does not levy a tax or set a rate, it is adjunctive to enforcing the collection of taxes on personal property. As such, we view it as a revenue measure, rather than a regulatory measure designed to promote the general health, safety, welfare or morals of the community. See *Schoo v. Rose*, 270 S.W.2d 940 (Ky. 1954); 7A Am. Jur. 2d, Automobiles and Highway Traffic § 53. See generally 60 C.J.S., Motor Vehicles § 109; 71 Am. Jur. 2d, State and Local Taxation § 69.

Defendant claims that K.S.A. 8-173(a) results in inequality because a person owing taxes only on his motor vehicle can receive a vehicle registration by paying the tax on that vehicle, while a person owing taxes on other personal property cannot receive a vehicle registration by paying tax on the motor vehicle.

The basic principles which this court must apply in determining the constitutionality of a statute were stated in *City of Baxter Springs v. Bryant,* 226 Kan. 383, Syl. ¶¶ 1-4, 598 P.2d 1051 (1979), as follows:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution."

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt."

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere."

See *State v. Cantrell,* 234 Kan. 426, Syl. ¶ 10, 673 P.2d 1147

(1983); *Sheppard v. Sheppard*, 230 Kan. 146, 149, 630 P.2d 1121 (1981); *Leiker v. Employment Security Bd. of Review*, 8 Kan. App. 2d 379, 659 P.2d 236 (1983).

The proper test for determining whether a statute offends the equal protection clause was reviewed in *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 616, 576 P.2d 221 (1978).

"Traditionally, the yardstick for measuring equal protection arguments has been the 'reasonable basis' test. The standard was set forth in *McGowan v. Maryland*, 366 U.S. 420, 425-26, 6 L.Ed.2d 393, 81 S.Ct. 1101:

" '. . . The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . .'

"In *Dandridge v. Williams*, 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153, reh. denied 398 U..S. 914, 26 L.Ed.2d 80, 90 S.Ct. 1684; it was stated:

" '. . . If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78. . . .' (p. 485.)"

See *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 30, 643 P.2d 87 (1982); *Von Ruden v. Miller*, 231 Kan. 1, 642 P.2d 91 (1982).

K.S.A. 8-173(a) does not on its face or in its application create any classification which could give rise to an equal protection challenge. The statute requires that each person pay all personal property taxes levied against that person for the preceding year before he or she may receive a vehicle registration for any of his or her vehicles. The statute draws no distinctions between different groups of individuals, and is not discriminatory. Defendant does not claim that the statute has been selectively enforced. Because the statute creates no classifications we need not examine whether such alleged classifications are reasonable. However, even if we viewed the statute as creating a classification between those who owe personal property taxes and those who do not, we would find that the classification was reasonable in light of the statute's purpose of assisting in collection of delinquent personal property taxes.

We hold that K.S.A. 8-173 does not violate the equal protection clause of the Fourteenth Amendment.

Affirmed.

REES, J.: Concurring and dissenting.

I concur in the decision to affirm, but my view of this case varies from that of the majority.

According to the majority, the single issue raised on appeal is whether K.S.A. 8-173 violates the equal protection clause of the Fourteenth Amendment by requiring proof of payment of *all personal property taxes* levied against a person for the preceding year before that person may register a motor vehicle. They undertake resolution of that question. Since the constitutionality of governmental action can only be challenged by a person directly affected and such challenge cannot be made by invoking rights of others (*Manzanares v. Bell,* 214 Kan. 589, 616, 522 P.2d 1291 [1974]), the majority therefore assumes that this defendant is or has been directly and adversely affected by K.S.A. 8-173, that is, that the defendant is a person who could not register his motor vehicles by paying only the tax on those motor vehicles because he owed taxes on other personal property owned by him. This assumption excuses any fault to be found in failure of the defendant to have produced evidence concerning his taxes on other personal property.

## I.

This is a direct appeal by the defendant from his conviction by a jury on seven counts of operating a motor vehicle not currently registered. The offenses occurred in December, 1982, and January and February, 1983. Three of the counts were prosecuted as statutory violations (K.S.A. 8-142 [First]) and four of the counts were prosecuted as Oberlin City Ordinance violations (Oberlin City Code 16-101 [1980]; Standard Traffic Ordinance for Kansas Cities, League of Kansas Municipalities, Sec. 195 [a] [1983]). The offenses are misdemeanors. K.S.A. 8-149; Oberlin City Code 16-206 (1980). For present purposes, the proscriptions are identical. The statute provides:

"It shall be unlawful for any person . . .

". . . To operate . . . upon a highway . . . any vehicle . . . which is not registered . . . or which does not have attached thereto and displayed thereon the number plate . . . assigned thereto . . . for the current registration year, including [the annual] registration decal required to be affixed . . . ." K.S.A. 8-142 (First).

Similarly, the ordinance provides:

"No person shall operate or drive any motor vehicle . . . upon a street or highway within [the] city unless such vehicle carries the currently effective license plate . . . including any registration decal required by the laws of Kansas . . . ." Standard Traffic Ordinance for Kansas Cities, League of Kansas Municipalities, Sec. 195 (a) (1983).

Operating a motor vehicle not currently registered is an absolute liability offense. Criminal intent patently is not an element of the offenses for which the defendant has been convicted. See K.S.A. 21-3204. *Cf. State v. Baker,* 1 Kan. App. 2d 568, 569, 571 P.2d 65 (1977) (speeding); *City of Hays v. Schueler,* 107 Kan. 635, 193 Pac. 311 (1920) (driving without a taillight); *State v. Merrifield,* 180 Kan. 267, 269, 303 P.2d 155 (1956) (driving when license suspended); *State v. Logan,* 198 Kan. 211, 216-17, 424 P.2d 565 (1967) (transportation of liquor not bearing tax stamp). Compare *State v. Wall,* 206 Kan. 760, 763-65, 482 P.2d 41 (1971) (leaving the scene of an injury accident; knowledge of collision).

Defendant appeared pro se at trial. Without contradiction, the evidence established that on each of the seven occasions when he was stopped and ticketed he was operating a motor vehicle not currently registered. His vehicle bore no current registration decal. He has not claimed it did. He knowingly engaged in the proscribed conduct.

Giving him the benefit of all doubt, defendant sought to claim excuse or justification in defense of the charges. Though somewhat imperfectly, he plainly claimed in the trial court that the Decatur County Treasurer, acting pursuant to K.S.A. 8-173, wrongfully refused annual registration of his motor vehicles. There has been no asserted or suggested claim that in this case the county treasurer acted other than as required of her by K.S.A. 8-173. As the majority does, defendant reads the statute to say that a county treasurer is required to refuse annual motor vehicle registration in the absence of the applicant's payment of taxes levied against him for personal property other than the motor vehicle for which registration application is made. As I will discuss later, I disagree.

Defendant's complaint was and is that the county treasurer's refusal to allow registration was wrongful because K.S.A. 8-173 is unconstitutional. The City aptly states in its brief that defendant's "only defense is that he was wrongly denied a registration decal because of the unconstitutionality of K.S.A. 8-173." This is made clear by defendant's motion for a new trial allegations that:

"[T]he court erred in its refusal to consider . . . the constitutionality of K.S.A. 8-173 which requires defendant . . . to pay tax upon *other* personal property as a pre-condition to registering and tagging of vehicles . . . . K.S.A. 8-173 is unconstitutional in that said statute requires this defendant to perform an act which has no relationship to the registering, tagging and taxing of the vehicle sought to be registered." (Emphasis added.)

The issues on appeal are stated in defendant's brief to be: "Is K.S.A. 8-173 unconstitutional?" and "Did the court err in refusing to consider the constitutionality of K.S.A. 8-173?"

It has never been defendant's contention that either misdemeanor statute, K.S.A. 8-142 (First) or the Oberlin City Ordinance, is unconstitutional. The constitutionality of K.S.A. 8-173 was *the* issue he asked and asks be decided.

If the county treasurer's refusal of defendant's applications for registration of his motor vehicles was mandated because of his nonpayment of taxes on personal property other than those motor vehicles, it remains that his knowing operation of his unregistered motor vehicles was not the product of duress, compulsion or necessity. His operation of the unregistered vehicles undisputedly was of his own volition. It is beyond question that there was no excuse or justification for defendant's commission of the criminal acts with which he was charged. *Cf. State v. Baker,* 1 Kan. App. 2d at 570; *City of Hays v. Schueler,* 107 Kan. at 635; *State v. Merrifield,* 180 Kan. at 269. Under defendant's theory, the unconstitutional action to which he was subjected was the county treasurer's implementation of K.S.A. 8-173, not his prosecution for the charged misdemeanor offenses. If K.S.A. 8-173 is unconstitutional as claimed by defendant, his proper course of action was to seek one of the extraordinary remedies, possibly a mandamus order, compelling the county treasurer's acceptance of his registration applications. Purported unconstitutionality of K.S.A. 8-173 was not an available defense to this prosecution.

In arriving at our decision in this case to affirm, particularly by an opinion the majority directs be published, nothing more need or should be said.

II.

Despite the foregoing conclusion, I will further discuss this case as if the constitutionality question was appropriate for present decision.

Defendant's challenge of the constitutionality of K.S.A. 8-173

arises out of a misreading of that statute. K.S.A. 8-173(b) is disregarded. Defendant reads the statute to say the county treasurer is required to refuse an annual motor vehicle registration application in the absence of payment of taxes levied against the applicant for personal property other than the subject motor vehicle. The majority mistakenly agrees.

At a special election held on August 6, 1974, more than three years after K.S.A. 8-173 became effective in its present form, Article 11, § 1 of the Kansas Constitution was amended so as to read in part:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that *the legislature may provide for the classification and the taxation uniformly as to class of motor vehicles,* mineral products, money, mortgages, notes and other evidence of debt *or may exempt any of such classes of property from property taxation and impose taxes upon another basis in lieu thereof."* (Emphasis added.)

Thereafter and by action of the 1979 legislature, K.S.A. 1983 Supp. 79-5101 *et seq.,* our so-called "tax and tags" law (see 1983 General Index to the Kansas Statutes Annotated, p. 620) came into effect January 1, 1980. It explicitly provides that "All motor vehicles . . . shall be valued and taxed under the provisions of this act and shall not be subject to property or ad valorem taxes levied under any other law of the state of Kansas or any resolution or ordinance of any taxing subdivision thereof." K.S.A. 1983 Supp. 79-5102(a). That statutory language and its expression of legislative intent could not be more plain and certain.

K.S.A. 8-173 reads:

"A county treasurer shall not accept an application for registration of a vehicle . . . unless the person making such application shall exhibit to such county treasurer:

"(a) A receipt showing that such person has paid all personal property taxes levied against such person for the preceding year, including taxes upon such vehicle . . . *or*

"(b) *Evidence that such vehicle* was assessed for taxation purposes by a state agency, or was assessed as stock in trade of a merchant or manufacturer, or *was otherwise assessed and taxed,* or was exempt from taxation under the laws of this state." (Emphasis added.)

K.S.A. 1983 Supp. 79-5101 *et seq.* operates to subject a Kansas motor vehicle owner to payment of tax arising out of that ownership. While this tax is a property or ad valorem tax in nature, it is

appropriate to apply to it a distinctive name. On the annual registration and tax statement form issued by the Kansas Department of Revenue, Division of Vehicles, it is referred to as "automobile property tax" and K.A.R. 1983 Supp. 92-55-1 refers to it too as "motor vehicle tax." To repeat, the motor vehicle is assessed and taxed under K.S.A. 1983 Supp. 79-5101 *et seq.* It is not subject to any other property or ad valorem tax. K.S.A. 1983 Supp. 79-5102(a) and see K.S.A. 1983 Supp. 79-306d.

Following K.S.A. 8-173(a) appears the disjunctive "or" and the presently relevant language of K.S.A. 8-173 is this:

"A county treasurer shall not accept an application for registration of a vehicle . . . unless the person making such application shall exhibit to such county treasurer . . . [e]vidence that such vehicle [1] was assessed for taxation purposes by a state agency, or [2] was assessed as stock in trade of a merchant or manufacturer, or [3] was otherwise assessed and taxed, or [4] was exempt from taxation under the laws of this state." K.S.A. 8-173(b).

To me, it is clear each of defendant's motor vehicles fell within the "otherwise assessed and taxed" category identified in K.S.A. 8-173(b). Each was "otherwise assessed and taxed" under K.S.A. 1983 Supp. 79-5101 *et seq.* For a motor vehicle "otherwise assessed and taxed," K.S.A. 8-173 does not require a receipt showing payment of "personal property taxes," that is, taxes levied against the motor vehicle owner for personal property other than the subject motor vehicle. Such payment and proof of payment is not a prescribed condition precedent to annual motor vehicle registration. This appears from the plain statutory language. Where a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Lakeview Gardens, Inc. v. State, ex rel. Schneider,* 221 Kan. 211, 214, 557 P.2d 1286 (1976); *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, 647, 518 P.2d 453 (1974); *State v. Sleeth,* 8 Kan. App. 2d 652, 655, 664 P.2d 883 (1983). To achieve a perceived beneficial result, it is wrong for us to hold a statute says something it does not.

The foregoing conflicts with Attorney General Opinion No. 82-59, March 8, 1982. "While an opinion of an attorney general may be persuasive it is neither conclusive nor binding." *Wulfkuhle v. Kansas Dept. of Revenue,* 234 Kan. 241, 248, 671 P.2d 547 (1983). The attorney general's opinion is not persuasive. It

reflects no consideration of the disjunctive "or" and K.S.A. 8-173(b).

As I see it, K.S.A. 8-173 did not call for the county treasurer's rejection of defendant's registration of his motor vehicles under the factual circumstances of application rejections we have all assumed in this case. I believe defendant's challenge of the constitutionality of that statute is not a justiciable issue whether asserted in this criminal action or another proceeding.

## III.

The majority unnecessarily addresses and undertakes resolution of the question whether K.S.A. 8-173 is constitutional. They do so on the premise that the question was "tacitly" or otherwise decided by the trial judge. That premise is wrong. Because the proffered issue was not decided by the trial judge, we should not. It is not an issue before us for review. Our Supreme Court has said: "We have consistently held, when it does not affirmatively appear that a question raised on appeal was presented to *and determined by the trial court,* this court does not consider it on review." *In re Estate of Jones,* 174 Kan. 506, 514-15, 257 P.2d 116 (1953) (emphasis added).

At trial the defendant sought to have the issue decided by the jury. The trial judge refused to permit that. Quite understandably, defendant's counsel on appeal does not find fault with that action. By statement of the second issue on appeal found in defendant's brief, his counsel clearly complains that the trial judge did not decide the question of the constitutionality of K.S.A. 8-173.

How the majority leapfrogs to the assumed task of passing on the constitutionality of K.S.A. 8-173 escapes my understanding. In my view, the trial judge neither tacitly nor otherwise decided the constitutional question. In this regard, I attach an appendix which is a verbatim statement of the entirety of the record of the trial proceedings material to defendant's assertion of his defense and the issue of the constitutionality of K.S.A. 8-173.

In summary, I agree with the majority opinion to the extent that defendant's convictions should be sustained but in all other material respects I respectfully dissent for the reason that I find the majority opinion substantially is a report of the decision of a case not before us.

## APPENDIX

### At the conclusion of the prosecution's voir dire:

"THE COURT: Mr. Raulston, you may inquire as to the jurors qualifications to sit in this matter. . . .

"MR. RAULSTON: I think there is a lot of people around here that knows why I'm here. It's a tax issue, it's not·a traffic issue.

"THE COURT: All right. At this point I'm going to ask all of the jurors to please step outside. I think there is a legal issue we need to take up. . . .

("The prospective jurors left the courtroom . . .)

"THE COURT: Mr. Raulston, at this time if you have a legal issue concerning the tax, you may now present it.

"MR. RAULSTON: The jury is not allowed to hear my side of the issue?

"THE COURT: This is a legal issue and if you wish to present it, we'll determine then whether the jury gets to hear it.

"MR. RAULSTON: . . . There is no justice in a taxing system that says you can't buy a tag for your car without paying unjust taxes, and if a jury can't hear my side of this story, then I'm in the wrong court.

"THE COURT: Well, that issue is not an allowable issue to be presented to the jury. . . . [T]he issues of tax and validity of the tax and issues concerning the validity of the dollars [sic] are [not] allowable jury issues. The questions which will be tried and be submitted to this jury, [are] one, whether or not you were operating a vehicle and whether or not you were operating an unregistered vehicle; and whether this occurred in Decatur County on different dates. That's the issue which the jury will determine. The others are matters of questions of law which shall be presented to the court. . . .

. . . .

"THE COURT: We're not going to get into a validity of the tax structure in a traffic case. . . ."

### At the conclusion of the prosecution's opening statement:

"THE COURT: Any opening statement, Mr. Raulston?

"MR. RAULSTON: . . . I've been ramrodded into this. Go right ahead."

### At the conclusion of the prosecution's direct examination of the Decatur County Treasurer:

"THE COURT: Mr. Raulston, any questions.

"MR. RAULSTON: Yeah, I might. That law that requires you to buy, here's a copy of it, pay these taxes whether you have an income or not, before you can buy a license, there should be no connection between taxes and license plates.

"THE COURT: Do you have any questions you'd like to ask of this witness?

"MR. RAULSTON: I tried to buy a license and she refused to sell me a license.

"MR. ROGERS: Objection, your Honor.

"THE COURT: Be sustained. You may ask questions, but you may not testify at this point. You'll have an opportunity to testify.

"MR. RAULSTON: No use."

At the conclusion of the prosecution's direct examination of Trooper Ralph LaSalle:

"THE COURT: Mr. Raulston, you may inquire.

"MR. RAULSTON: No more than I would have any others. The law says I have to pay my taxes before I can have it registered, get my vehicles registered, and I object to these taxes, and that's where it stands.

"THE COURT: Do you have any questions of the witness?

"MR. RAULSTON: No."

At the conclusion of the prosecution's direct examination of the Oberlin chief of police:

"THE COURT: Mr. Raulston, any questions of this witness?

. . . .

"THE COURT: Mr. Raulston, you may ask him questions. You'll have your chance to testify later.

"MR. RAULSTON: Well, I don't think there is any use."

At the close of the prosecution's direct examination of Trooper Steve Myers:

"THE COURT: Mr. Raulston, any questions?

"MR. RAULSTON: I see no reason to question him."

At the conclusion of the prosecution's direct examination of Oberlin police officer Ken Badsky:

"THE COURT: Mr. Raulston, any questions?

"MR. RAULSTON: Oh, maybe a little bit here. I was the only criminal in this county, I guess, because the cops had no trouble finding me.

"MR. ROGERS: Your Honor —

"THE COURT: Do you have a question? You need to ask him questions. You'll have an opportunity if you wish to testify later.

"MR. RAULSTON: The questions are loaded. No questions."

Following the prosecution's announcement that it rested:

"THE COURT: Mr. Raulston . . .

. . . .

". . . Do you wish to present any evidence in your defense?

"MR. RAULSTON: Well, you'll probably overrule it, so I'd just as well keep still.

"THE COURT: All right. At this time then that would conclude all the evidence to be admitted into the case. . . ."

Out of the jury's presence and concerning jury instructions:

"THE COURT: . . .

"You have some proposed instructions you'd like to have me consider, Mr. Raulston?

"MR. RAULSTON: I had a U.S. Constitution here to give each one of those jurors. Really, what you're doing here, you're forcing me to pay taxes to support

un-American activities because the money is being used for that. Before you sell me a tag, I'm not going to support un-American activities or the overthrow of our government by paying taxes to support it.

"THE COURT: Okay. Your requested instruction is the Constitution of the United States, is that correct?

"MR. RAULSTON: Say that again.

"THE COURT: I'm asking you is your only requested instruction the one concerning the, the entire copy of the United States Constitution?

"MR. RAULSTON: That's what I'm defending.

"THE COURT: Okay. What we're at now is at the instruction level, and what the instruction level is where this court gives the jury the law that applies to this particular case. . . . I'm willing to see and consider any instructions that you would like to have submitted to the jury. The only instructions submitted to the jury will be the one that I submit to the jury. I will consider any that you have, and I may or may not give them, but I'd be happy to look at any you have.

"MR. RAULSTON: Well . . . now you're going to instruct the jury, but you're not going to let me instruct the jury.

"THE COURT: I'll let you review the instructions, which we have here, and when the final instructions are in, I'll listen to any proposals you have.

"MR. RAULSTON: Why don't you let the jury hear my side of it?

"THE COURT: Mr. Raulston, we'll proceed in the normal manner, not necessarily the way you wish to proceed, but the way that the law —

"MR. RAULSTON: It ain't normal according to the U.S. Constitution.

"THE COURT: Well, we will take a recess until the balance of the instructions are back. I will complete them, and I will give you an opportunity to review them, and you may state any objections you have to them at that time. The State will have an opportunity to review them at which time they may state any objections.

. . . .

"THE COURT: . . .

"Any objections to Instructions One through Twelve, Mr. Raulston? Did you have any objection to Instructions One through Twelve, and the verdict forms One through Seven?

"MR. RAULSTON: My only objection would be it tells the jury how to vote.

"THE COURT: Any other objections?

"MR. RAULSTON: It violates my constitutional rights.

. . . .

"THE COURT: Mr. Raulston, did you have any others?

"MR. RAULSTON: Oh, yeah, I have others; but I don't think it would mean anything here.

"THE COURT: Okay. The court then would approve Instructions One through Twelve. . . ."

At the conclusion of the prosecution's closing argument:

"THE COURT: Mr. Raulston, closing argument?

"MR. RAULSTON: Well, he was talking about state law. What they're asking me to do is violate my commitment to supporting the U.S. Constitution.

"THE COURT: Mr. Raulston, you cannot hand those to the jury, they're not instructions. You may argue, but you may not hand those to the jury.

. . . .

"MR. RAULSTON: I am committed to defending the U.S. Constitution over state law.

"THE COURT: Well, Mr. Raulston, you may argue your case to the jury. You may not hand what you have there to the jury.

"MR. RAULSTON: Here is a copy of the state law that violates the U.S. Constitution.

"THE COURT: Mr. Raulston —

"MR. RAULSTON: Taxation without representation.

. . . .

"MR. RAULSTON: And under the state law, I was convicted before I even come here. . . .

"MR. ROGERS: Objection, your Honor. . . .

"THE COURT: Be sustained. You should address yourself to the [issues] before the jury.

"MR. RAULSTON: I'm not going to address them to your issues, I'm going to address them to my issues or I'm not going to say anything.

"THE COURT: Well, you may make your closing argument within the bounds which I told you.

"MR. RAULSTON: You've already told the jury to vote me guilty, and I'm not going to say another word."